Andrew J. Schwaba (NC SBN 36455)
212 South Tryon Street
Suite 1725
Charlotte, NC 28281
Telephone: 704.370.0220
Facsimile: 704.370.0210
aschwaba@schwabalaw.com

R. Kevin Fisher (SBN 131455)
2121 Park Drive
Los Angeles, CA 90026
Telephone: 310.862.1220
Facsimile: 310.388.0805
rkf@fkslaw.net

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM ANDREWS, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HARBOR FREIGHT TOOLS USA, INC.<br><br>Defendant. | ) Case No.:<br>)<br>) **CLASS ACTION COMPLAINT**<br>)<br>)<br>) July 15, 2021<br>)<br>)<br>)<br>)<br>) |

**CLASS ACTION COMPLAINT**

1. Plaintiff files this new Complaint related to defective jackstands designed and manufactured by the Defendant, Harbor Freight Tools USA Inc. This complaint brings claims for breach of warranty, negligence, and products liability against Harbor Freight Tools USA, Inc. (Harbor Freight) relating to jack stands sold by Defendant. These stands were manufactured with a defect that made them inherently dangerous.

2. This action is brought on behalf of a recalled jack stands class, defined in Paragraph 23. Plaintiff intends to move the Court to consolidate this case with the previously consolidated cases included in the already consolidated cases included within *Comes v. Harbor Freight Tools, USA, Inc*. – 2:20-CV-05451-DMG-KK. These actions will cover three separate classes of people. Some individuals purchased jack stands that have been recalled, but Defendant has failed to make many of those who bought them whole, including the Plaintiff Andrews. Once consolidated, the consolidated Plaintiffs will allege three classes of consumers. The first is defined in Paragraph 23 below. The second class of Plaintiffs suffered property damage to their cars, homes, or other personal property besides the jackstands themselves when the stands failed. Finally, the third group of people bought different jack stands that suffer from a similar defect, but which the Defendant has not recalled.

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff Williams Andrews is an adult resident citizen of Vanderburgh County, Indiana.

4. Plaintiffs intend to move the Court to consolidate this case with Comes v. Harbor Freight Tools, USA, Inc. – 2:20-CV-05451-DMG-KK, which cases have already been consolidated with those of Thomas v. Harbor Freight Tools USA Inc., 20-05898 and Mitchell v. Harbor Freight Tools USA Inc., 20-07906.

5. Defendant Harbor Freight is a corporation existing under the laws of Delaware with its principal place of business in Calabasas, California. It is a corporate citizen of Delaware and California.

6. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the claims in this case form part of a class action in which the amount in controversy exceeds the sum of $5,000,000.00 and the members of the class include citizens of different states than some or all of the defendants.

7. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because the Defendant resides in this district, having its principal place of business in Calabasas, California.

**FACTUAL BACKGROUND**

8. Harbor Freight is a retail discount tool seller and distributor. It sells merchandise over the internet and operates roughly 1000 stores nationwide from its headquarters located at 26565 Agoura Road in Calabasas, California.

9. Harbor Freight sells automotive jack stands under the inhouse brand name "Pittsburgh Automotive," which are manufactured in China. The jack stands come in a variety of sizes and purported weight load limits, including three-ton and six-ton varieties. The jack stands consist of an aluminum or steel base that hold a post with teeth on one side. The teeth allow the jack stands to be raised and lowered to several different elevations using a handle with a stopper known as a pawl. Once the stand is set to the desired elevation, the user lowers the handle to engage the pawl and can tighten a screw on the side of the base into a groove running along the side of the post that purportedly provides further assurance that the jack stand will remain at the desired level.

10. Jack stands are meant to secure automobiles in an elevated position while the person working on the car makes repairs underneath the automobile. The person repairing the car is typically positioned partially or wholly beneath the automobile and relies on the jack stand to keep from being crushed or injured by the car's weight. The strength and security of the jack stand is paramount to safety.

11. Harbor Freight's "Pittsburgh Automotive" jack stands are defective, hazardous, and unsafe due to inconsistencies in the manufacturing, reportedly caused by aging in the tooling. The ratchet teeth are manufactured to an insufficient depth, causing the locking pawl to fail to fully engage and hold the jack stand securely at the desired level. This defect makes the jack stands inherently dangerous because they can

collapse under a load, causing serious danger to anyone under the vehicle as well as nearby individuals and property. In addition, the three-ton jack stands had inconsistent location indexing of the pawl armature hole.

12. Harbor Freight has admitted that while under load, and with a shift in weight, the jack stands' pawl will disengage from the extension lifting post, allowing the stand to drop suddenly. On March 20, 2020, Harbor Freight advised the National Highway Transportation Safety Administration (NHTSA) that the six-ton Pittsburgh Automotive jack stands would be recalled due to the ratchet teeth manufactured to an insufficient depth. These first recalled jack stands were six-ton steel jack stands manufactured under product ID 61197.

13. In May of 2020, Harbor Freight issued an additional recall on three-ton steel jack stands with product ID numbers 56371 and 61196. Harbor Freight advised that the product quality was compromised by an aging of the tooling and inconsistent location indexing of the pawl armature hole.

14. Harbor Freight initially attempted to replace some of the recalled jack stands with different three-ton jack stands with product ID numbers 56373. These stands were also defective, as Harbor Freight CEO Eric Smidt admitted in an email:

> "I'm disappointed and embarrassed because we've identified a welding defect in a small number of the Pittsburg 3-ton steel jack stands (SKU 56373) that replaced the recalled jack stands," Eric Smidt, the company's CEO and founder, wrote in a message to consumers.

Kelly Tyko, "Harbor Freight recalling more jack stands after 'welding defect' found in replacement stands," USA TODAY, Jul. 7, 2020, available at https://www.usatoday.com/story/money/2020/07/07/harbor-freight-jack-stands-recall/5393897002/ (last accessed September 30, 2020).

15. The same defects found in the recalled jack stands are also found in other Harbor Freight "Pittsburgh Automotive" jack stands, including three-ton aluminum jack stands with product ID numbers 56357, 61627, and 91760.

16. Defendant Harbor Freight knew about the latent defect in all of these jack stands, as consumers had reported these failures long before Plaintiff suffered property damage or injury. Harbor Freight failed to disclose this knowledge to Plaintiff and other potential members of the class. Had this defect been properly disclosed, it would have made the jack stands virtually worthless.

## FACTS CONCERNING THE INDIVIDUAL PLAINTIFF

17. In 2020, Plaintiff William Andrews purchased a Pittsburgh Automotive three-ton aluminum jack stand, part no. 61196, from a Harbor Freight store in Evansville, Indiana, with the intent to use the stands to work on his personal vehicles.

18. On March 23, 2021, Mr. Andrews placed his personal vehicle on this jack stand. Mr. Andrews was changing the rear driver's side strut on a 2016 Chevrolet Impala vehicle when the jackstand failed, pinning Mr. Andrews's hand between the strut and the vehicle. This failure was caused by the design and manufacturing defect in the Harbor Freight jack stands.

19. At all times material, the Plaintiff was a member of the Harbor Freight Inside Track Club, a membership program that offers exclusive deals, discounts and savings, including weekly emails from Defendant, as part of the membership with the Club.

20. At all times material, the Plaintiff never received any notification from Harbor Freight, including notification through the Harbor Freight Inside Track Club, that his jackstands, model number 61196, were the subject of a recall or other notification that the jackstands were dangerous, defective, or otherwise the subject of a recall.

21. In May of 2021, Plaintiff Andrews provided notice to the Defendant that while using their jack stand, the jack stand failed and was defective. Plaintiff Andrews received no response from the Defendant.

22. Mr. Andrews experienced the failure of the jack stand within the applicable limitations period.

## CLASS ACTION ALLEGATIONS

23. This Nationwide class action is maintainable against the Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff William Andrews seeks to represent the following nationwide class against Defendant:

> All consumers nationwide who purchased defective jack stands that have not been recalled by Harbor Freight as of the filing of this complaint, including but not limited to product ID numbers 56371, 66196, 61197, 56357, 61627, and 91760 56357, 61627, and 91760, who have not received a full refund for their defective product and/or suffered property damage caused by these jack stands. Claims for personal injury caused by the jack stands, as well as all employees of the Court and plaintiffs' counsel are excluded.

This class will be referred to in the remainder of this complaint as "the aluminum jack stand class."

24. Pursuant to Rule 23(a)(1), the property damage class is so numerous that joinder of all class members is impracticable. Harbor Freight sold at least 1.7 million jack stands in the United States. A significant percentage of these stands failed and caused property damage. The number of purchasers of these jack stands who suffered such damage is far too large for practicable joinder in a single suit.

25. Pursuant to Rule 23(a)(1), the aluminum jack stand class is so numerous that joinder of all class members is impracticable. Upon information and belief, Harbor Freight sold over 400,000 aluminum jack stands in the United States. Many of them

have not received a full refund for their defective product. The number of members of this class is far too large for practicable joinder in a single suit.

26. Pursuant to Rule 23(a)(1), the recalled jack stand class is so numerous that joinder of all class members is impracticable. Harbor Freight sold at least 1.7 million of the jack stands that have been recalled in the United States. Many of them have not received a full refund for their defective product. The number of members of this class is far too large for practicable joinder in a single suit.

27. Pursuant to Rule 23(a)(2) and 23(b)(3), this case is predominated by questions of law and fact common to all class members. The common questions include:

a) whether the jack stands sold and distributed by Defendant possessed a material defect at the time of sale;

b) whether the jack stands were manufactured with ratchet teeth at an insufficient depth;

c) whether Defendant's practices breached the implied warranty of merchantability;

d) whether Defendant's sale of the defective jack stands constitutes negligence;

e) whether Plaintiffs and members of the class are entitled to injunctive and equitable relief, and, if so the nature of such relief; and

f) whether Plaintiffs and members of the class are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages.

28. Pursuant to Rule 23(a)(3), the claims of Plaintiff are typical of those of the class. Like Plaintiff Andrews, every member of the aluminum jack stand class purchased an aluminum jack stand and has failed to receive a refund for their defective product or suffered property damage as a result of its failure.

29. Pursuant to Rule 23(a)(4), Plaintiff will fairly and adequately represent the interests of each of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class

action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the classes.

30. Each class in this complaint is certifiable under Rules 23(b)(2) and 23(b)(3). Certification is appropriate under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

31. Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to individually litigate their claims against Defendant. Thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each person harmed by Defendant's conduct would also strain the court system and increase delay, expense, and the potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**COUNT I: STRICT LIABILITY – MANUFACTURING DEFECT**

32. Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as if fully set forth herein.

33. At all times herein mentioned, Defendant sold, tested, and marketed the jack stands at issue. Plaintiff purchased the jack stands as they were manufactured, without modification from any other party.

34. The jack stands had a manufacturing defect that caused the ratchet teeth on the jack stand lifting extension post to inconsistently engage the pawl to a significant depth.

35. At all times since they were manufactured, the defect made the jack stands unreasonably dangerous to human life and property.

36. Plaintiff Andrews and the aluminum jack stand and jack stand recall suffered damages because they purchased jack stands that were unreasonably dangerous and were unusable in their defective condition.

37. Plaintiff and the class suffered property damage because these unreasonably dangerous jack stands failed and caused the damage.

## COUNT II: NEGLIGENCE

38. Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as if fully set forth herein.

39. At all times, Defendant had a duty to use reasonable care in designing, manufacturing, selecting, marketing, and selling the items in its stores.

40. Defendant breached this duty by allowing the defectively designed and manufactured jack stands to be placed in its stores, and by marketing and selling the defectively designed and manufactured jack stands.

41. Defendant's breach caused damage to Plaintiff and members of the class, because they purchased worthless, dangerous, defectively designed and manufactured jack stands from the Defendant.

42. Defendant's breach also caused damage to Plaintiff and the class because these jack stands failed, causing Plaintiff and the class to suffer damage to their personal property.

## COUNT III: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

43. Plaintiffs incorporate by reference the factual allegations of the preceding paragraphs as if fully set forth herein.

44.     Defendant controlled the marketing and sale of the jack stands at issue, and placed them in the stream of commerce.

45.     By offering the jack stands for sale, Defendant impliedly warranted to Plaintiff and the class that they were of merchantable quality, safe, and fit for their intended purpose.

46.     The jack stands were not of merchantable quality and could not safely be used for their intended purpose. The defects that caused this to be the case were not disclosed to Plaintiff and the class.

47.     Plaintiff and the class purchased and used the jack stands in reliance upon the implied warranties of the defendant.

48.     Plaintiff and the class suffered damage because they purchased worthless jack stands.

49.     Plaintiff and the members of the class suffered additional damages when the jack stands failed and caused damage to their real or personal property.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully prays for the following relief,

(A) An order certifying the above-described nationwide class pursuant to Federal Rule of Civil Procedure 23, with appropriate notice to absent class members;

(B) An order appointing Plaintiff's counsel as class counsel for the nationwide class;

(C) After a jury trial, an award of damages based on those suffered by Plaintiff and the class in purchasing the worthless jack stands, as well as the property damage suffered;

(D) Any further or different relief the Court may find appropriate.

Respectfully submitted,

Dated: July 15, 2021

**FISHER & KREKORIAN**

s/ R. Kevin Fisher
R. Kevin Fisher
California SBN 131455
P.O. Box 890
Santa Monica, CA 90406
(310) 862-1220 (telephone)
(310) 388-0805 (facsimile)

**SCHWABA LAW FIRM**

s/ Andrew J. Schwaba
Andrew J. Schwaba
NC Bar No.:  36455
212 North Tryon Street
Suite 1725
Charlotte, NC 28281
(704) 370-0220
(704) 370-0210 (fax)
aschwaba@schwabalaw.com
(*pro hac vice motion to be filed*)